# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>               Respondent,<br><br>    v.<br><br>B.K.,<br>DOB: 03/20/96<br>               Appellant. | No. 68174-5-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: <u>March 11, 2013</u> |

SPEARMAN, A.C.J. — B.K., a juvenile, appeals his adjudication for possession of a stolen vehicle, arguing that the trial court erroneously failed to suppress the testimony of A.R., who testified about B.K.'s confession only after being illegally recorded talking about the confession. Because A.R.'s testimony was not about the recorded statements, but instead consisted of his independent recollections of facts obtained before any recording, there was no error in admitting the testimony. We affirm.

## FACTS

On June 11, 2011, Martin Ross awoke to find his blue Prius missing. Ross later realized the spare key frequency operated button (FOB), which he kept in a kitchen drawer, was also missing. Ross and his wife had asked his neighbor's son to watch their house while they were out of town. Upon returning, it was clear the neighbor's son

had entertained several friends at their house while they were away. Ross reported his suspicions about the neighbors' son to the police.

On June 16, Officer William Anderson[1] the stolen Prius near Northgate Mall and attempted to stop the car in the mall parking lot. After Anderson activated his lights and siren several times, the car eventually pulled into a parking spot. The car's doors opened and the occupants started to get out. After Anderson asked them to get back in the car, the three-backseat passengers remained, but the three in front ran toward Macy's. The driver, M.B., was arrested inside the mall shortly thereafter.

Three days later, on June 19, Officer Eric Michl drove to Safeco Field with his son A.R. in his police car. A.R. had plans to watch the Mariners' game with friends and family while Michl worked directing traffic. When Michl pulled over to park, he flashed his lights, thereby activating the camera/recording system inside the police car. Michl either attempted to deactivate the recording system and failed, or simply forgot about the recording, upon leaving to direct traffic. A.R. waited in his dad's patrol car. A.R. had general knowledge that activation of the lights activated the camera, but did not think about it, and did not give consent to be recorded. While in the car, A.R. called his girlfriend. One of the topics of discussion included appellant B.K.'s theft of the Prius.

Michl later realized the recording device had been activated and listened to the recording. Michl heard his son A.R. tell his girlfriend that B.K. had stolen a car. Michl contacted various parents, including B.K.'s father. Later that day, Michl also confronted

---

[1] All of the officers referred to herein, serve with the Seattle Police Department.

2

his son, who disclosed all of his conversations with the appellant B.K. According to A.R., on June 11, 2011, he was at B.K.'s house, when B.K. admitted that he stole a Prius. B.K. said he had taken it from a house his brother's friend was watching. B.K. told A.R. he took the keys first and returned later to take the car. A.R. saw B.K. driving the Prius at school the following Monday. Michl approached Officer Hossfeld, telling Hossfeld that his son had information that B.K. had stolen the Prius. A.R. gave a statement to the police. Hossfeld arrested B.K., and the State charged him with possession of a stolen vehicle.

Regarding the CrR 3.6 portion of the combined CrR 3.6 and adjudicatory hearing, defense counsel argued the testimony and statements of A.R. should be excluded as fruit of the poisonous tree:

> But I think it's pretty clear ... that the evidence of Ramirez would not otherwise have been discovered but for his father's illegal recording and I think at this point the court should apply the exclusionary rule to all of his testimony, including his statements and his own personal observations, again, because it is connected back to the illegal search, the illegal recording, in violation of the Privacy Act.

Verbatim Report of Proceedings (VRP) 12/13/12 at 207.

The court found A.R.'s conversation was private and entitled to protection under Washington's Privacy Act. The court thus declined to admit the recording. The court found, however, the violation to be "sufficiently attenuated" from A.R.'s testimony as to make exclusion of his testimony unnecessary:

> I would say that what I think the record shows here is that the witness Ramirez, his observations and alleged overhearing of alleged admissions of the respondent here happened before the recorded conversation, so that's a factor. The recorded conversation itself is not being offered into evidence. The youth has said that he

3

has decided that what is supposed to have happened here was wrong and he wanted to participate. I think the court has to analyze that with care because I think he was subpoenaed one way or the other, so he has to participate, whether he wants to or not. His father is a police officer and did some investigation on the case, and so that's a factor or not. So I think what I do is I look at the fruit of the poisonous tree factors.

The case of <u>Childress</u> is helpful, and those factors were argued. I think it's not an exclusive list, so I think I can consider here that it was the testimony is sought to be admitted is prior and independent of the illegally recorded conversation and involves a witness, not a co-defendant or a participant and there was free will exercised. He was quite clear in his testimony that he wanted to come in and cooperate now. And it says: Factor 3. The fact that the exclusion would permanently disable the witness from testifying about relevant material facts, regardless of how unrelated such testimony might be to the purpose of the original illegal search. I do think in the end that his testimony is not related to the illegal recording, so I'm going to find that his testimony is sufficient attenuated, not to be subject to the exclusionary rule under the fruit of the poisonous tree doctrine. So I will admit it.

VRP 12/14/13 at 4-6.

At trial, M.B. (the driver of the Prius) testified that the B.K. had been in the front passenger seat when they were pulled over, and that B.K. had given him the FOB key to drive the car earlier in the day. M.B. also testified that B.K. told him the car was stolen as the police were pulling them over. Additionally, S.B., one of the juveniles who remained in the back seat of the Prius, testified that the respondent B.K. provided M.B. with the Prius.

The trial court adjudicated B.K. guilty of possession of a stolen vehicle. B.K. appeals.

## DISCUSSION

B.K. argues the trial court erroneously declined to suppress the testimony of A.R. in that the "attenuation" doctrine does not apply in Washington. The State concedes the

trial court erroneously focused on whether A.R.'s testimony was attenuated from the recording, but it nevertheless argues suppression was not warranted because the Privacy Act does not apply to A.R.'s testimony. We agree with the State.

RCW 9.73.050 operates to exclude "information obtained in violation of RCW 9.73.030." Such information includes the recordings themselves, as well as testimony from witnesses describing the content of the illegal recordings, or the behavior and mannerisms of persons while being illegally recorded. See, e.g., State v. Fjermestad, 114 Wn.2d 828, 835, 791 P.2d 897 (1990) ("any information" to be excluded includes "visual observations and assertive conduct" occurring during the illegal recording).

Where the challenged testimony, however, "is not about recorded statements but consists of the witnesses' independent recollections of facts obtained through personal knowledge prior to the recordings" such testimony "is not subject to suppression under the privacy act." State v. Johnson, 40 Wn. App. 371, 375, 699 P.2d 221 (1985). Here, A.R.'s testimony was about his independent recollection of B.K. telling him he stole the car, and that recollection was gained through personal knowledge before the recording at issue in this case. As such, A.R.'s testimony was not subject to suppression under the privacy act, and it was not error to decline the motion to suppress.

Moreover, any error in admitting A.R.'s testimony was harmless. Admission of evidence in violation of the privacy act is a statutory, not a constitutional, violation. State v. Courtney, 137 Wn. App. 376, 383, 153 P.3d 238 (2007). Accordingly, the error is deemed harmless unless it is reasonably probable that, had the error not occurred, the

5

outcome of the trial would have been different. State v. Cunningham, 93 Wn.2d 823, 831, 613 P.2d 1139 (1980).

Here, the driver of the Prius, M.B., testified that B.K. had been in the front passenger seat when they were pulled over, that B.K. had given him the FOB key to drive the car earlier in the day, and that B.K. told him the car was stolen. Additionally, S.B. testified that B.K. provided M.B. with the Prius. In finding of fact 12, which is unchallenged and therefore a verity on appeal, the trial court found M.B.'s testimony to be credible. State v. Stevenson, 128 Wn. App. 179, 193, 114 P.3d 699 (2005). Under these circumstances, it is not reasonably probable that, had A.R.'s testimony been suppressed, the trial court would have declined to adjudicate B.K. guilty of possession of a stolen car.

Affirmed.

WE CONCUR: